In re David E. WILSON, Jacqueline I. Wilson, Debtors.

David E. Wilson Jacqueline I. Wilson, Plaintiffs,

v.

Educational Credit Management Corp., Defendant.

Bankruptcy No. 99–02097–W.

Adversary No. 00–9164–W.

United States Bankruptcy Court, N.D. Iowa.

Dec. 4, 2001.

Gary Papenheim, Parkerburg, IA, for Debtors.

Christopher Foy, Waverly, IA, for Defendant.

### ORDER RE COMPLAINT TO DETERMINE DISCHARGEABILITY

PAUL J. KILBURG, Chief Judge.

On November 13, 2001, the above-captioned matter came on for trial on Debtors' Complaint to Determine Dischargeability of Debt. Debtor/Plaintiff Jacqueline T. Wilson appeared with her attorney, Gary Papenheim. Attorney Christopher Foy appeared for Defendant Educational Credit Management Corporation. Evidence

was presented after which the Court took the matter under advisement. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

## STATEMENT OF THE CASE

Plaintiffs David and Jacqueline Wilson filed a Chapter 7 petition on August 9, 1999. They were granted a discharge on November 17, 1999. This case was re-opened to allow Plaintiff/Debtor Jacqueline I. Wilson to file an adversary complaint seeking discharge of certain student loans based upon allegations of undue hardship pursuant to 11 U.S.C. § 523(a)(8). This adversary was filed against U.S.A. Group Loans Services, Inc. However, Educational Credit Management Corporation is the assignee of all student loans held by Jacqueline I. Wilson and Educational Credit Management Corporation acknowledges that it is the only educational lender holding student loan obligations for Debtor Jacqueline Wilson.

## FINDINGS OF FACT

Jacqueline Wilson (Debtor) lives in Parkersburg, Iowa and is 39 years of age. She was born in Florida and raised in Iowa Falls where she graduated from high school in 1980. She enrolled at Wartburg College in 1980 and attended for one year before she took time off. She recommenced college in 1982 and graduated in December of 1985 with a B.A. Degree in Communications.

She married David E. Wilson in August, 1986. Mr. Wilson had two daughters from a prior marriage who resided with Debtors. Mr. Wilson received a back injury in late 1987 or early 1988. This involved a ruptured disc which eventually required surgical fusion of the vertebrate. Mr. Wilson is presently 47 years of age. He has had numerous back surgeries since the initial surgery and recently had his fifth back surgery in March, 2001. Mr. Wilson is a man of limited education and was a farm and construction worker. He has not worked in approximately ten years. He is receiving Medicare and social security benefits. His social security payment is $600 per month. The parties own a small acreage from which Mr. Wilson generates modest income. He has rented some of the buildings and has placed crop land in the set aside program. These activities generate approximately $300 to $400 per year. He is not enrolled in the set aside program as of the time of trial.

Debtor Jacqueline Wilson again enrolled in college in the fall of 1986 at the University of Northern Iowa intending to receive a graduate degree. After starting and stopping on several occasions, she received a Masters Degree in 1992. Thereafter, she again enrolled with the intent of receiving a teaching certificate. She was not successful in completing this program and discontinued work on a teaching certificate in 1995. As of the time of trial, she needed 12 hours of graduate level work to receive a teaching certificate.

During college, Jacqueline Wilson was employed at various part-time jobs. It was at that time that she also began to accumulate grants and student loans. From 1985 through 1995, she was employed at various occupations including employment at a radio station as a media center consultant in the area of graphic layouts and similar employments. Her salary during that period of time ranged from $5 at the beginning to approximately $7 at the end.

At the time of trial, Debtor was employed by APAC Services where she commenced work in November of 1996. She is involved in long distance services. For three years, she was a supervisor earning approximately $20,500 per year. Later she requested to terminate her job as a

supervisor and be allowed to work as a line worker at an hourly rate of $11.84 per hour. In addition, to her regular work week, she has had periodic overtime.

Over the years, Debtor made limited payments on her student loans. However, in approximately 1993, her grandmother passed away and with her inheritance, Debtor paid off some student loans. Debtor seems to dispute the exact amount that she owes. However, she also acknowledges that she signed a loan consolidation agreement in 1995 and that this agreement is binding upon her. The amount which she presently owes in student loans is $109,000. She acknowledges that she has not made any payments toward this obligation since the consolidation in 1995.

Debtor testified that she is in fair health. Her only complaints appear to be that she has allergies and periodic headaches for which she takes medication. There are no other significant claims of illness. Debtor's stepchildren are now adults and no longer reside in the home. The parties reside on an acreage which has a value of approximately $62,000. They live in a manufactured home which is located on the property. They owe approximately $8,800 toward the acreage. The parties' financial statement lists living expenses which appear reasonable. Debtor has net disposable income which could be applied each month toward this obligation. Debtor acknowledges that she could pay possibly $125 per month towards this obligation though she has not done so since 1995.

Ms. Amy Schreiner from the Educational Credit Management Corporation testified on behalf of her employer. She testified that the William D. Ford Program provides various options to pay back delinquent student loans over an extended period of time. She testified that Debtor's present default would not affect her eligi-

bility. She testified that the purpose of the program is to refinance existing student loan debt. She testified that the monthly payment under this program would be approximately $159 per month at an interest rate of 8% per annum.

### CONCLUSIONS OF LAW

■ A student loan obligation can be discharged if it "imposes an undue hardship upon the debtor or the debtor's dependants." 11 U.S.C. § 523(a)(8). The Eighth Circuit applies a "totality of the circumstances" test in determining whether an obligation imposes an undue hardship. *In re Cline*, 248 B.R. 347, 349 (8th Cir. BAP 2000). The Bankruptcy Code contains no definition of "undue hardship" and the Court must determine on a case-by-case basis whether a student loan debt is dischargeable. Debtor must prove by a preponderance of the evidence that the exception provided for in § 523(a)(8) is applicable to the case. *In re Scholl*, 259 B.R. 345, 346–47 (Bankr.N.D.Iowa2001).

■ In making the determination under § 523(a)(8), *In re Andresen*, 232 B.R. 127, 139 (8th Cir. BAP 1999), provides for a three-part analysis. First, the Court examines Debtor's ability to obtain, retain, and continue employment and Debtor's expected earnings from such employment. *Id.* Second, the Court evaluates Debtor's reasonable necessary living expenses. *Id.* The last factor allows the Court to consider any other relevant facts and circumstances involved in a particular case. *Id.* Finally, the Court must evaluate the record as a whole to determine whether Debtor met the burden of proving that an undue hardship exists. *Id.* at 140.

■ Present inability to repay a loan does not suffice as a hardship. *In re Roberson*, 999 F.2d 1132, 1135 (7th Cir. 1993). Debtor must show that she is "suf-

fering from truly severe, even uniquely difficult circumstances, not merely severe financial difficulty." *In re Ogren,* No. 95–12116KC, slip op. at 6, 1996 WL 671356 (Bankr.N.D.Iowa Oct.10, 1996). In the end, the Court must be convinced that it is hopeless that the loans will ever be repaid. *Roberson,* 999 F.2d at 1136.

## DISCUSSION

■ Debtor asks the Court to conclude that her circumstances are such that she will be unable to pay her student loans presently or in the future. The record, however, reflects that she is a 39 year old person with a Master's Degree in Graphic Arts. Additionally, she is only 12 hours short of a teaching certificate. She is employable and has been almost continuously employed since she stopped attending classes. While her income is not as substantial as she would like, she earns in excess of $11 per hour. Admittedly, the job prospects in Parkersburg. Iowa are possibly more limited than in other areas. The Master's Degree which Debtor holds is probably not as marketable in this area as it would be in a larger market. Nevertheless, Debtor has not made any concerted efforts to seek a broader market for her skills. Debtor is a relatively healthy woman who has acquired marketable skills and is capable of continuous employment. There is nothing in this record to indicate that she would not be capable of substantially greater earnings in the future.

The second factor requires the Court to evaluate the necessary living expenses of Debtor and her family. Debtor has offered into evidence Debtor's Exhibit 6 which sets out the family's current expenditures. Debtors list total monthly expenses of $2,382.17. Debtors' expenses are within the range of reasonableness. No serious challenge is made by Defendant that Debtor or her husband are living beyond their means. However, the financial statements reflect in Debtors' Exhibit 5 that they have family income each month of $2,519.60. Based upon Debtors' own figures, there is net income at the end of each month which could be dedicated toward repayment of this loan. Therefore, there is no showing made that Debtor does not have current financial resources within which to make some payment toward defraying her student loan obligations.

Finally, the Court must consider other relevant facts and circumstances. One fact of significance is that Debtor's husband is disabled. He has had numerous back surgeries and receives Medicare and social security benefits. He has been unable to work for an extended period of time. Nevertheless, through the receipt of social security benefits, Medicare, and a minimal amount of income generated by the acreage, Mr. Wilson's disability is not as onerous as it may be under other circumstances. Testimony establishes that Mr. Wilson will be responsible for medical bills for the most recent surgery. However, the testimony in this regard was vague and speculative as to the amount which is remaining due. The testimony was also unclear as to the amount of the medical bills which will be covered by Medicare. Ultimately, it is the conclusion of this Court that Mr. Wilson's disability, in and of itself, is not such a determinative factor that it would tip the totality of circumstances in favor of discharge on an undue hardship basis.

The other relevant factor relates to the applicability of the William D. Ford Program. Based on the amount of available disposable income each month, it appears that the William D. Ford Program may have applicability. This is a factor which weighs in favor of nondischargeability. While certainly not dispositive, it tips the

balance somewhat in favor of nondischargeability of this obligation.

After reviewing the evidence and after carefully considering all the arguments raised by counsel, this Court is not satisfied that Debtor Jacqueline Wilson has established by a preponderance of evidence that there exists such an undue hardship that discharge of her student loans is warranted.

**WHEREFORE,** Debtor Jacqueline I. Wilson has failed to prove that the student loan obligations owed to Defendant Educational Credit Management Corporation imposes an undue hardship pursuant to 11 U.S.C. § 523(a)(8).

**FURTHER,** the obligations owed to Educational Credit Management Corporation are not dischargeable.

**FURTHER,** Plaintiffs' adversary complaint seeking discharge of this obligation on the basis of undue hardship is **DENIED.**