**In the Matter of Sarah Jane WARNER, Debtor.**

**Sarah Jane Warner, Plaintiff,**

v.

**Educational Credit Management Corporation, Defendant.**

**Bankruptcy No. 02–81169.
Adversary No. 02–08036.**

United States Bankruptcy Court.
D. Nebraska.

June 19, 2003.

Richard Register, Register Law Office, Fremont, NE, for debtor.

## ORDER

TIMOTHY J. MAHONEY, Chief Judge.

Hearing was held in Omaha, Nebraska, on June 17, 2003, on the Complaint to Determine Dischargeability filed by Sarah Jane Warner, Richard Register appeared for the debtor, and Gary L. Young appeared for Educational Credit Management Corporation.

## Issue

In this case the debtor has requested a hardship discharge of her student loan debt, pursuant to 11 U.S.C. § 523(a)(8).

## Facts, Law, & Discussion

The plaintiff is a 38–year–old single parent raising two boys, one of whom will be 17 years old in July 2003 and will begin his senior year in high school in the fall. The second child will be 14 years old in July 2003. The second child has Attention Deficit Hyperactivity Disorder and depression, both of which are being treated with prescription drugs. The second child has had some behavioral problems and some run-ins with the police. His psychiatrist has, in the past, and prior to the medications taking complete effect, recommended that he not be left alone for much time at all.

The debtor obtained a bachelor's degree from the University of Nebraska at Omaha in general studies, with a major in English. She did not receive teacher training.

Since graduation from college in the early 1990s, she has been unable to obtain employment other than in the child-care industry, except for a short period of time when she worked at West Telemarketing in Omaha, Nebraska. She did telephone work and clerical work there, and when she left, approximately five years ago, she was earning a little more than $11 per hour.

She now works as a nanny for a family in Omaha, caring for three children under the age of four. She works 8:30 in the morning to 3:30 in the afternoon Monday through Friday and from 5:00 p.m. to 10:00 p.m. on Saturday. She testified she has received notice that her employment will be terminated in August of 2003 because the family no longer needs a full-time nanny, as two of the children will begin part-time preschool.

Upon receiving such notice, she applied for a number of different positions, both in the child-care area and in the public library system of Omaha. Only the public library position would pay her more than what she is currently making. Her year 2002 tax return shows gross income of approximately $26,000. She also receives a little more than $300 per month for child support. As a result of her income situation, she was eligible for the Earned Income Credit refund, which amounted to approximately $1,500 this year. She used the earned income refund to catch up on her car insurance and other expenses that she had gotten behind on.

Ms. Warner and her children live in a three-bedroom condominium for which she pays a total of $804 per month, including condo fees. To purchase her interest in the condominium, she was required to pay a downpayment in the amount of $2,000, which was given to her by her parents.

Ms. Warner does not have health insurance for herself, because of the cost. Her former husband, the father of her two boys, pays health insurance for them, but she is required to pay the "co-pays" and any amount of medical expense incurred on behalf of the boys that is not covered by the health insurance.

Her budget shows no funds available for unanticipated repairs or emergencies. It does show a cell phone expense of $40 per month, cable TV in the amount of $35 per month, and Internet service in the amount of $24 per month. She admits that she could drop all three of those items if she really needed to cut her expenses, but if she did so, she would have no TV. reception, the children would not have the ability to access the Internet for school purposes or entertainment, and life would be somewhat more difficult without access to the cell phone.

The defendant, the holder of the student loan, presented evidence that a special pro-

gram authorized by the federal government to assist student loan debtors, the William D. Ford Loan Consolidation Program, would enable her to retire the loan over twenty-five years at $191 per month. This loan, which was incurred more than ten years ago, is in the original principal amount of approximately $33,000. Because of deferments the debtor has requested over the years, resulting from her inability to make payments because of her low income, the interest has continued to accrue and she now owes more than $57,000.

■ Ms. Warner has asked that her student loan obligation be discharged because requiring her to pay it would impose an undue hardship upon her and her dependents. The statutory authority for such discharge is at 11 U.S.C. § 523(a)(8). Caselaw in the Eighth Circuit requires the trial judge to consider, when determining an undue hardship request, the current financial circumstances of the debtor, the current physical and mental status of the debtor and her dependents, and the anticipated future financial and family circumstances. If, after considering all of the current and future anticipated circumstances, it appears that the debtor would be able to make some regular payments on the loan, either currently or in the future, then, according to the caselaw in the Eighth Circuit, the court should deny the request for a hardship discharge.

■ A debtor seeking discharge of an educational loan debt bears the burden of proving that repayment of those loans would impose an undue hardship on her and her dependents. *Maschka v. Nebraska Higher Educ. Loan Programs (In re Maschka)*, 89 B.R. 816, 818 (Bankr.D.Neb. 1988).

■ "Undue hardship" is not defined in the Bankruptcy Code, so courts have devised their own methods of determining whether an undue hardship exists. In the Eighth Circuit, the "totality of the circumstances" test is used. *Long v. Educational Credit Mgmt. Corp. (In re Long)*, 322 F.3d 549, 553 (8th Cir.2003) (citing *Andrews v. South Dakota Student Loan Assistance Corp. (In re Andrews)*, 661 F.2d 702 (8th Cir.1981)). *Andrews* requires "a totality of the circumstances inquiry with special attention to the debtor's current and future financial resources, the debtor's necessary reasonable living expenses for the debtor and the debtor's dependents, and any other circumstances unique to the particular bankruptcy case." *Andresen v. Nebraska Student Loan Program, Inc. (In re Andresen)*, 232 B.R. 127, 140 (8th Cir. BAP 1999).

■ As the Eighth Circuit expressed in *Long,*

Simply put, if the debtor's reasonable future financial resources will sufficiently cover payment of the student loan debt—while still allowing for a minimal standard of living—then the debt should not be discharged. Certainly, this determination will require a special consideration of the debtor's present employment and financial situation—including assets, expenses, and earnings—along with the prospect of future changes—positive or adverse—in the debtor's financial position.

322 F.3d at 554–55 (citing *Andresen*, 232 B.R. at 141).

■ In this case, the debtor's current monthly income is not sufficient to pay her current monthly expenses. However, she could reduce some monthly expenses, such as cable TV, cell phone and Internet service. In addition, within a year or a little more, one child will reach the age of majority and the expense of him living in the household may decrease, because he may leave. When he leaves, his portion of the child support will terminate. It is possible, but not likely, that at that time Ms.

Warner could move into a less expensive and smaller housing unit. It is not likely because currently she has a minimum housing cost of $800 per month for a three-bedroom condominium and her unrebutted testimony is that her prior housing unit, a two-bedroom apartment, cost almost as much each month as her current unit.

Ms. Warner currently does not appear to have any serious medical problems, although she testified she has been treated for depression.

If this court were permitted to grant a hardship discharge based solely upon the current financial situation of the debtor, such a discharge would be granted. That is because her current and near-term reasonable living expenses exceed her current and most likely near-term income. However, because of the caselaw in the Eighth Circuit with regard to "undue hardship" discharges, the decision of this court must go the other way.

Ms. Warner's situation, although relatively financially bleak at the moment, is likely to improve in the future. Her children will eventually leave home. Her expenses will be reduced. With her children out of the home, she will have more time to work longer hours or more than one job. She does have now, and will have in the future, the ability to seek work outside the child-care industry. She testified that she quit her telemarketing job because she did not like it, but she did not testify that she quit it because she could not do it. In other words, there are other industries in which this able-bodied, intelligent and articulate woman, living in Omaha, Nebraska, may be able to find work that will provide her with an income higher than that which she now receives.

### Decision

The request for an "undue hardship" discharge of the student loan obligation of this debtor is denied.

Separate judgment will be entered in favor of the defendant and against the plaintiff. The debt is not dischargeable.

### JUDGMENT

Hearing was held on June 17, 2003 on the Complaint to Determine Dischargeability filed by Sarah Jane Warner. Richard Register appeared for the debtor-plaintiff, and Gary L. Young appeared for Educational Credit Management Corporation, defendant.

IT IS ORDERED:

In accordance with the Order entered this date with respect to the Complaint to Determine Dischargeability filed by Sarah Jane Warner, Filing No. 1 in A02–08036, judgment is hereby entered in favor of the defendant and against the plaintiff. The student loan debt is not dischargeable.