In the Matter of Steven Edward VER-MAAS and Jennifer Doreen Ver-Maas, Debtors.

Steven Edward VerMaas and Jennifer Doreen Vermaas, Plaintiffs,

v.

Student Loans of North Dakota And United States Department of Education, Defendants.

Bankruptcy No. BK00–80310.
Adversary No. A00–8079.

United States Bankruptcy Court.
D. Nebraska.

Dec. 3, 2003.

Howard T. Duncan, Duncan Law Office, Omaha, NE, for Steven Edward VerMaas, Jennifer Doreen VerMaas, Spearfish, SD, Plaintiffs.

Douglas B. Anderson, Bismarck, ND, UNIPAC, Pro se.

Laurie M. Barrett, U.S. Attorney's Office, Omaha, NE, for Student Loans of North Dakota, UNIPAC, St. Paul, MN, United States Department of Education, Direct Loan Servicing Center, Utica, NY, Bank of North Dakota, Defendants.

## MEMORANDUM

TIMOTHY J. MAHONEY, Chief Judge.

This matter, concerning a request by the debtors to allow the discharge of their student loans on a hardship basis under 11 U.S.C. § 523(a)(8), has been submitted to the court by agreement of the parties, on stipulation of facts, documentary evidence, and written briefs. Howard Duncan appeared on behalf of the debtors/plaintiffs; Douglas Anderson appeared on behalf of Student Loans of North Dakota; and Laurie Barrett appeared on behalf of the United States Department of Education. This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(L).

Mr. and Mrs. VerMaas each took out guaranteed student loans in their own individual names. The United States Department of Education holds the note due from Mrs. VerMaas, and the entity entitled Student Loans of North Dakota holds the notes owed by Mr. VerMaas. The "undue hardship" analysis will be dealt with separately for each debtor.

## I. FACTS

A. *Concerning both debtors*

1. Plaintiffs were residents of the State of Nebraska at the time they filed their petition in bankruptcy on December 28, 2000. The plaintiffs moved to Spearfish, South Dakota, on September 1, 2001.

2. Neither plaintiff is incompetent, a minor, nor a member of the Armed Forces of the United States.

3. Steven VerMaas does not work due to various physical and mental ailments. However, he does not qualify for disability benefits.

4. The plaintiffs have two dependent children, a ten-year-old son and a seven-year-old daughter, who reside with the plaintiffs.

5. Steven VerMaas is the primary caretaker of the children when Jennifer VerMaas is at work.

6. Jennifer VerMaas is currently employed and is paid bi-weekly. Her net income as of September 2003 was approximately $2,829.90 per month. Her income has increased approximately $133.48 since October 5, 2002.

7. Jennifer VerMaas was earning $60,000 per year in September 2001, prior to moving to Spearfish, South Dakota.

8. Plaintiffs listed monthly expenses totaling $2,674.22, including:

| | |
|---|---|
| Rent | $ 471.62 |
| Real Estate Taxes | $ 70.00 |
| Home Maintenance | $ 40.00 |
| Car Payment | $ 300.00 |
| Car & Home Insurance | $ 180.00 |
| Transportation | $ 110.00 |
| Internet, Phone, & Cable | $ 140.00 |
| Water & Sewer | $ 50.00 |
| Electricity | $ 180.00 |
| Medical Bills | $ 150.00 |
| Life Insurance | $ 12.60 |
| Credit Card Payment | $ 150.00 |

| | | |
|---|---|---|
| Loan to Union Bank | $ | 50.00 |
| Food | $ | 600.00 |
| Recreation, Newspapers, etc. | $ | 120.00 |
| Clothing | $ | 50.00 |
| **TOTAL** | | **$2,674.22** |

According to Amended Schedule J, some of plaintiffs' expenses changed since they filed for bankruptcy. Plaintiffs' rent of $475.00 was replaced by the purchase of a mobile home at $471.62 per month. However, the purchase of the mobile home has increased other monthly expenses. Plaintiffs now incur property taxes at $70.00 per month and home insurance of $80.00 per month; electricity increased by $118.00 per month; and water and sewer increased by $22.00 per month. Further, other expenses also increased since the plaintiffs filed their bankruptcy petition: Internet, telephone, and cable increased $32.00 per month to $140.00; medical bills and prescriptions increased $85.00 per month; credit card bills increased $75.00 per month; and a new loan appeared to Union Bank for $50.00 per month. According to information from Mrs. VerMaas, the loan at Union Bank has a loan balance of $550.00 and will be paid off in July 2004. (Fil.# 83). The credit card debt has not been established by the debtors to be post-petition accounts. They are simply old, closed accounts the debtor is trying to pay off. *Id.* Plaintiffs no longer incur the $45.00 storage fee or the $100.00 payment to Jennifer VerMaas' parents. Dep. of Jennifer VerMaas at 25:4–19; 27:2–12 (Fil.# 75). Even considering plaintiffs' expenses as claimed on their Amended Schedule J, they have a surplus of $155.68 per month.

9. Plaintiffs are seeking to discharge debt in the amount of $84,247.18. Of that debt, their joint student loans total $72,086.65, or 85.6 percent of the total debt. Jennifer VerMaas' student loan debt totals $48,443.45, or 57.5 percent of the total debt.

B. *Concerning Jennifer VerMaas*

1. On November 1, 1999, in consideration for making and disbursing loans in the amount of $33,443.45, Jennifer VerMaas executed a promissory note for a Federal Direct Consolidation Loan in the amount of $33,443.45. This is the one student loan in this bankruptcy that applies to the defendant U.S. Department of Education.

2. The promissory note was to be repaid in monthly installments commencing February 7, 2000, until paid in full.

3. Jennifer VerMaas made a one-time payment of $381.23 in December 1999.

4. The Department of Education has since demanded payment from Jennifer VerMaas.

5. Jennifer VerMaas has failed to comply with the Department of Education's demand for payment.

6. As of September 25, 2003, the amount due on Jennifer VerMaas's Direct Loan was $45,951.63 ($35,-443.45 principal, plus $10,508.18 unpaid interest).

7. On February 3, 2003, post-discharge, Jennifer VerMaas changed from the Graduated Repayment plan to the Income Contingent Repayment plan under the terms of the Direct Loan Program.

8. Based on plaintiffs' circumstances and income as of February 4, 2003, Jennifer VerMaas' monthly payment under the William D. Ford Direct

Loan Program Income Contingent Repayment Plan is $381.23.

9. Jennifer VerMaas is also eligible for the following payment plans:

a. Extended Repayment Plan.

Under this plan, her payments would be $350.87 for 300 months.

b. Graduated Repayment Plan.

Under this plan, her payments would increase over time. Initially, her payments would be approximately $301.56 and by year 25, her payments would be $472.32.

C. *Concerning Steven VerMaas*

1. All of the factual findings listed above which apply to both Mrs. and Mr. VerMaas are incorporated herein, and with the addition of the following factual findings, this section contains all of the factual findings concerning Mr. VerMaas.

2. Steven VerMaas suffers from various mental and physical health conditions. Based upon these problems, he is unemployed, and the family relies solely on Mrs. VerMaas for financial support. Mr. VerMaas is in his early 50's and has a history of psychiatric disability. The medical records in evidence show that he has been diagnosed with schizo-affective disorder, bipolar disorder, and chronic anxiety disorder. There has also been a diagnosis of agoraphobia. His symptoms can be controlled by medication to some extent.

3. Based upon the medical documents admitted into evidence, I find that the physical and mental problems of Steven VerMaas are extensive and debilitating in nature. He apparently is a non-functioning individual relying upon his wife for support both physically and mentally. He has been unable to hold down any jobs, although he was able to attend college and he did receive the benefit of the student loans in question.

4. Mr. VerMaas has not been determined to be totally disabled by the Social Security Administration and is not now receiving disability payments from any source.

5. At the time of the bankruptcy petition filing, Mr. VerMaas owed defendant Student Loans of North Dakota ("SLND") the sum of $25,501.67, representing nine student loans he obtained to finance his post-secondary education during the period 1992 through 1998.

6. He obtained an associate of arts degree from Dickinson State University in Dickinson, North Dakota, in May of 1998 with a cumulative grade point average of 3.84.

7. Since entering re-payment status, Mr. VerMaas has made no payments toward his student loan obligation. He has not pursued a consolidation loan, which would provide him the opportunity to make payments under an Income Contingent Repayment plan as described above with reference to the loan held by the United States Department of Education. He has also not pursued an administrative discharge of his loans based upon a total and permanent disability under 34 C.F.R. § 685.212.

## II. CONCLUSIONS OF LAW AND DISCUSSION

A. *Legal standard*

Student loans are not dischargeable in bankruptcy unless excepting the debt from discharge would impose an undue hardship on the debtor and the debtor's dependants.

11 U.S.C. § 523(a)(8). Section 523(a)(8) of the Bankruptcy Code provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> \* \* \* \* \* \*
>
> (8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependants[.]

■ A debtor seeking discharge of an educational loan debt bears the burden of proving that repayment of those loans would impose an undue hardship on her and her dependents. *Maschka v. Nebraska Higher Educ, Loan Programs (In re Maschka)*, 89 B.R. 816, 818 (Bankr.D.Neb. 1988); *Bender v. Educational Credit Mgmt. Corp. (In re Bender)*, 297 B.R. 126, 130 (D.Neb.2003) (citing *Long v. Educational Credit Mgmt. Corp. (In re Long)*, 271 B.R. 322, 328 (8th Cir. BAP 2002), *rev'd on other grounds*, 322 F.3d 549 (8th Cir.2003)).

■ "Undue hardship" is not defined in the Bankruptcy Code, so courts have devised their own methods of determining whether an undue hardship exists. In the Eighth Circuit, the "totality of the circumstances" test is used. *Long v. Educational Credit Mgmt. Corp. (In re Long)*, 322 F.3d 549, 553 (8th Cir.2003) (citing *Andrews v. South Dakota Student Loan Assistance Corp. (In re Andrews)*, 661 F.2d 702 (8th Cir.1981)). *Andrews* requires "a totality of the circumstances inquiry with special attention to the debtor's current and future financial resources, the debtor's necessary reasonable living expenses for the debtor and the debtor's dependents, and any other circumstances unique to the particular bankruptcy case." *Andresen v. Nebraska Student Loan Program, Inc. (In re Andresen)*, 232 B.R. 127, 140 (8th Cir. BAP 1999).

■ As the Eighth Circuit expressed in *Long,*

> Simply put, if the debtor's reasonable future financial resources will sufficiently cover payment of the student loan debt—while still allowing for a minimal standard of living—then the debt should not be discharged. Certainly, this determination will require a special consideration of the debtor's present employment and financial situation—including assets, expenses, and earnings—along with the prospect of future changes—positive or adverse—in the debtor's financial position.

322 F.3d at 554–55 (citing *Andresen*, 232 B.R. at 141).

■ Factors to consider when weighing the question of undue hardship under the totality of the circumstances test include:

(1) Total incapacity now and in the future to pay one's debts for reasons not within the control of the debtor.

(2) Whether the debtor has made a good faith effort to negotiate a deferment or forbearance of payment.

(3) Whether the hardship will be long-term.

(4) Whether the debtor has made payments on the student loan.

(5) Whether there is permanent or long-term disability of the debtor.

(6) The ability of the debtor to obtain gainful employment in the area of study.

(7) Whether the debtor has made a good faith effort to maximize income and minimize expenses.

(8) Whether the dominant purpose of the bankruptcy petition was to discharge the student loans.

(9) The ratio of the student loan to the total indebtedness.

*Morris v. Univ. of Arkansas (In re Morris),* 277 B.R. 910, 914 (Bankr.W.D.Ark. 2002) (citing *D'Ettore v. Devry Inst. of Tech. (In re D'Ettore),* 106 B.R. 715, 718 (Bankr.M.D.Fla.1989)).

 "The hardship must be more than mere unpleasantness. [It] must present a certainty of hopelessness and not a mere present inability to meet financial commitments due to a current, temporary state of unemployment." *Randall v. Norwest Student Loan Servs. (In re Randall),* 255 B.R. 570, 577 (Bankr.D.N.D.2000). Present inability to repay a loan does not suffice as a hardship. *Wilson v. Educational Credit Mgmt. Corp. (In re Wilson),* 270 B.R. 290, 293–94 (Bankr. N.D.Iowa 2001) (citing *In re Roberson,* 999 F.2d 1132, 1135 (7th Cir.1993)). The debtor must show that she is "suffering from truly severe, even uniquely difficult circumstances, not merely severe financial difficulty." *Wilson,* 270 B.R. at 294 (citing *In re Ogren,* No. 95–12116KC, 1996 WL 671356, at *4 (Bankr.N.D.Iowa Oct.10, 1996)). "In the end, the Court must be convinced that it is hopeless that the loans will ever be repaid." *Wilson,* 270 B.R. at 294 (citing *Roberson* at 1136).

B. *Jennifer VerMaas' loan*

 Plaintiff Jennifer VerMaas is currently employed as a nurse, netting approximately $36,788 per year. She is not disabled. Since October 5, 2002, Plaintiff has increased her net income by approximately $133.48 per month and it can be assumed that she is capable of earning similar pay increases in the future.

The debtors' monthly net income is $2,829.90 and their monthly expenses, even if accepted as listed, are $2,674.22, resulting in disposable income of $155.68 per month. Moreover, the expenses include some which will be paid off in the short term. For example, the $50 payment to Union Bank will end in July 2004, the $150 credit card debt "is being paid down," and the $300 auto payment will end in March 2006. These temporary expenses total $500.00 per month.

 In order to obtain a hardship discharge of her student loans, the debtors must prove that they have done all they could to maximize income and minimize expenses. *Cheney v. Educational Credit Mgmt. Corp. (In re Cheney),* 280 B.R. 648, 660 (N.D.Iowa 2002) (quoting *Long,* 271 B.R. at 328 (8th Cir. BAP 2002)).

 A debtor cannot voluntarily reduce her income and then seek a discharge of her student loan debt as an undue hardship. *Cline v. Illinois Student Loan Assistance Ass'n (In re Cline),* 248 B.R. 347, 352 (8th Cir. BAP 2000); *Clark v. United Student Aid Funds, Inc. (In re Clark),* 240 B.R. 758, 762 (Bankr.W.D.Mo.1999) ("a debtor who has the ability to work, must work"); *Cardwell v. Higher Educ. Assistance Found. (In re Cardwell),* 95 B.R. 121, 122 (Bankr.W.D.Mo.1989) (a medical condition that permits a debtor to work only part-time does not impose an undue hardship if the condition is not permanent). In *Block v. U.S. Dept. of Education (In re Block),* 273 B.R. 600 (Bankr. W.D.Mo.2002), the court addressed this issue where the debtor had an adjusted gross income of $42,188, but returned to the field of education and decreased his annual income to $31,000. The court found that the debtor voluntarily reduced his income and was capable of making a

higher salary if he so desired. "The Court cannot permit the Debtor to, in effect, create his own undue hardship and avoid ... repayment of his student loans by voluntarily choosing to ... [earn] a smaller salary, regardless of how rewarding he finds the [job]." *Id.* at 605. *See also U.S. Dept. of Education v. Rose (In re Rose),* 227 B.R. 518, 525 (W.D.Mo.1998) ("A debtor cannot choose to take a low paying job and eschew a higher paying job (without compelling reason, which must be more than mere convenience) and thereby create undue hardship ... the question is what is the debtor capable of earning.")

The plaintiffs assert that Jennifer VerMaas decided to move from West Point, Nebraska, to Spearfish, South Dakota, to a lower paying position so that she could be geographically closer to her extended family and have the emotional support of her family. However, her parents and grandparents live 270 miles, or five hours, away from Spearfish, South Dakota. Her parents and grandparents do not provide babysitting, home maintenance, assistance with the household chores, or financial assistance.

 According to the debtors' Amended Schedule J, some of their expenses have increased since they filed for bankruptcy, even though Jennifer VerMaas's income has decreased substantially. Their rent expense of $475 was replaced by the purchase of a mobile home for $471.62 per month, which requires other associated expenses amounting to an additional $290 per month. Plaintiffs now incur property taxes at $70.00 per month and home insurance of $80.00 per month. Electricity increased by $118.00 per month. Water and sewer costs increased by $22.00 per month. "While owning a home is a major part of the American dream and is usually a way to build equity, it should not come at the expense of the Debtor's student loan credi-

tors (in this case, the American taxpayers)." *Block,* 273 B.R. at 607. In *Block,* the court determined a reasonable amount for rent and utilities and reduced the debtor's monthly expenses accordingly. In this case, at the petition date, prior to moving to South Dakota, the plaintiffs were obtaining rent and utilities for a total monthly cost of $475.00. It would be reasonable to assume that the plaintiffs could obtain housing for a similar expense now, particularly in light of the fact that they knew prior to moving that they could not pay their expenses and were taking a cut in income to move to Spearfish. Therefore, plaintiffs' monthly expenses for rent and utilities could be decreased by $290.00.

Further, other expenses also increased since the plaintiffs filed their bankruptcy petition: Internet, telephone, and cable increased $32.00 per month to $140.00; medical bills and prescriptions increased $85.00 per month; credit card bills increased $75.00 per month; and a new loan repayment to Union Bank for $50.00 per month. The loan at Union Bank has a loan balance of $550.00 and will be paid off in July 2004. The credit card debt is not post-petition debt. Since the plaintiffs filed for bankruptcy, their expenses increased $387.00 ($532 increase less $145 for expenses no longer incurred).

According to the Department of Education, some of the listed expenses appear to be excessive for someone claiming a hardship discharge of their student loans. Although I don't necessarily agree with the conclusions reached by the Department, I do think it is appropriate to consider that some of the expenses cited by the Department could be reduced. The plaintiffs list monthly cable, telephone and internet expenses of $140.00. In *Hollister v. Univ. of North Dakota (In re Hollister),* 247 B.R. 485, 490 (Bankr.W.D.Okla.2000), the court found that the debtor's monthly

expenses of $40.00 for satellite television was excessive. *See also Standfuss v. U.S. Dept. of Education (In re Standfuss)*, 245 B.R. 356, 360 (Bankr.E.D.Mo.2000) (court noted that the debtors in that case attempted to minimize their expenses by discontinuing their cable television). In *Warner v. Educational Credit Mgmt. Corp. (In re Warner)*, 296 B.R. 501, 504 (Bankr.D.Neb.2003), the court noted that the debtor could reduce monthly expenses including cable TV and internet services.

The plaintiffs also list a recreation expense of $120.00 per month, in addition to the cable and Internet bills. In *Standfuss,* the court found that recreational expenses (Including newspapers, magazines, etc.) of $100.00 per month for a family of five was excessive. The plaintiffs' family size in this case is four. Therefore, the plaintiffs' monthly allotment for recreation expense is excessive for someone claiming a hardship discharge of their student loans.

One suggestion by the Department, to show that the debtors can pay the loans, is for them to eliminate their cable and Internet bills, and cut their telephone bill to $40.00. By doing so, they could save $100 per month. Further, plaintiffs could cut their recreation expenses in half, saving another $60 per month and decrease their rent and utility obligations by $290 per month. Cutting these three expenses alone would bring the total monthly expenses to $2,224.22. This would leave the plaintiffs with a monthly surplus of $605.68, which is more than sufficient to make Jennifer VerMaas's payments of $381.12 under the Income Contingent Repayment Plan.

Additionally, as stated above, the plaintiffs have listed certain expenses that will be paid off in the near future: $50 payment to Union Bank will end in July 2004; $150 credit card debt "is being paid down"; $300 auto payment will end in March 2006.

These temporary expenses total $500. These expenses, together with the expenses the plaintiffs can reasonably cut, would decrease plaintiffs' expenses to $1,408.54, creating a surplus of $1,421.36 per month.

The plaintiffs are seeking to discharge debt in the amount of $84,247.18. Of that debt, their joint student loans total $72,086.65, or 85.6 percent of the total debt. Jennifer VerMaas's student loan debt totals $48,443.45, or 57.5 percent of the total debt. The inference can be drawn that a primary purpose of the bankruptcy filing was to discharge the student loan debt.

The debtors argue that the court should partially discharge Jennifer VerMaas's student loan debt, decreasing her obligation to $25,000.00, to be made in payments of $122 per month. However, there is little authority for doing so. *See Brown v. Union Fin'l Servs., Inc.*, 249 B.R. 525 (Bankr.W.D.Mo.2000):

> I find nothing in the Code that allows me to restructure the student loan obligation or reduce it. I must, therefore, find either that Brown has the ability [to] repay the entire obligation, or that repayment of the entire loan would impose an undue hardship. I am aware of decisions in other Circuits that reduce a student loan obligation to an amount that the debtor can repay. No decisions in the Eighth Circuit, however, endorse such an action, nor will I.

249 B.R. at 530–31 (citations omitted). *See also Hawkins v. Buena Vista Coll. (In re Hawkins)*, 187 B.R. 294, 300–01 (Bankr. N.D.Iowa 1995) (Dischargeability "is an all-or-nothing proposition.... Congress has not given bankruptcy courts the authority to rewrite student loans.").

In *Andresen,* the Bankruptcy Appellate Panel considered whether the debtor's

three student loans could be considered individually to determine undue hardship. After a lengthy analysis, the court determined that the debtor was not granted a "partial discharge" of her student loan debt where the bankruptcy court discharged two of the three student loans and excepted one loan from discharge. The court reasoned that § 523(a)(8)'s language "expressly refers to a student loan, an overpayment, or any obligation. The words provided in the section are clearly singular. The Code does not refer to a debtor's sum of student loans, aggregate student loan debt, or other accumulated, consecutive, or consolidated loan obligations." *Andresen*, 232 B.R. at 136. The court expressly noted, "The Eighth Circuit Court of Appeals has not specifically decided the issue of partial dischargeability." *Andresen*, 232 B.R. at 135. "While it appears plain to us that there is no authority in the Code or elsewhere for partial discharge or other revision of a debtor's individual educational loan obligations, that question is not before us and we therefore decline to decide it." *Andresen*, 232 B.R. at 137.

It is clear from the evidence that, even considering Mrs. VerMaas's current income and the current reasonable necessary living expenses of the family unit, there is net disposable income available of approximately $150 per month which could be applied to her student loan. In addition, some minimal reduction in living expenses could result in a significant increase in funds available to pay on the student loan.

■ Moreover, Mrs. VerMaas has the ability, as shown by her prior work experience and income level, to earn significantly more money on an annual basis than she currently earns. There is no requirement in the Bankruptcy Code that a debtor maximize family income for the benefit of creditors. However, there is also no requirement that a student loan be discharged when it is clear that a debtor had, currently has, and in the future will continue to have, the ability to earn sufficient income to make student loan payments under the various special opportunities made available through the Student Loan Program.

## C. Steven VerMaas's loan

■ With regard to Mr. VerMaas, the fact that he was physically, mentally, and emotionally capable of obtaining an associate of arts degree is an indication that he is able to fill out the appropriate forms to give the student loan program the opportunity to review and analyze his situation under the appropriate regulations. His failure to take such action is a relevant fact and circumstance that this court must consider and that this court has considered. Although it does appear that he has no current income and very little likelihood of future income, the Bankruptcy Code student loan hardship discharge should not be granted unless the student loan debtor has exhausted his administrative remedies under the student loan program. Even though it is unlikely that the program can ever obtain payments from Mr. VerMaas because he has no income and no assets, the program administrators have the right to the opportunity to evaluate his financial circumstances and apply their regulatory procedures. Unless a debtor provides the program with sufficient information to apply its administrative procedures, there is no legal or factual basis for granting a hardship discharge under the Bankruptcy Code.

## III. CONCLUSION

Neither the student loan of Mrs. VerMaas nor the student loans of Mr. Ver-

Maas are discharged. Separate judgment will be entered.